UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANGELA D. MIJANOVICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14-CV-163 |
| | ) (JORDAN/SHIRLEY) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Plaintiff Angela D. Mijanovich seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On August 11, 2011, Plaintiff protectively filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with an alleged onset date of September 19, 2008. [Tr. 119-129, 146-47]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 74-80]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, S.D. Schwartzberg, on December 17, 2012 in Kingsport, Tennessee. [Tr. 88-89, 27]. The ALJ issued an unfavorable decision on January 9, 2013. [Tr. 9-26]. Plaintiff filed her appeal of the decision, which the

Appeals Council declined to review on April 17, 2014. [Tr. 6-8, 1-4].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 4, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since September 19, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: low back pain, a major depressive disorder and a posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) that does not require more than frequent postural activities. She is limited to simple, unskilled work and she is better with things than with people.
>
> 6. The claimant is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from September 19, 2008, through the date of

2

this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 14-21].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a

4

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was

5

supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

On August 11, 2011, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of September 19, 2008. [Tr. 119-129, 146-47]. Plaintiff was born on November 8, 1973 and stated that she completed the twelfth grade. [Tr. 146, 152]. Plaintiff reported past relevant work as a fast-food worker, laborer, housekeeper, and sales representative. [Tr. 152]. Plaintiff stated that she ceased work due to termination but that her depression and mental impairments affected her work abilities. [Tr. 151].

Plaintiff sought treatment at Wellmont Hawkins County Memorial Hospital ("Wellmont") and Hawkins Medical Center ("Hawkins") for various ailments from 2007 through 2011. [Tr. 202-13, 245-65, 283-84]. A CT scan of Plaintiff's chest was conducted on September 6, 2007 and revealed "no interthoracic mass and no acute interthoracic abnormality. [Tr. 260]. On September 19, 2007, Plaintiff underwent a Holter Monitor test with unremarkable results. [Tr. 259]. On December 16, 2011, Plaintiff sought treatment at Hawkins for stomach pain, headaches, fatigue, and sourness in her mouth and throat. [Tr. 245]. Her physical exams were all negative and she was positive for anxiety, depression, and headaches. [Tr. 245-46].

Dr. Diane Whitehead conducted a psychological evaluation on September 19, 2011. [Tr. 215-18]. Plaintiff reported that she was homeless and suffered from childhood trauma that

6

contributed to her mental impairments. [Id.]. She stated that she was depressed and had trouble with her memory. [Id.]. Dr. Whitehead noted that Plaintiff had difficulty concentrating during the examination. [Tr. 217]. Plaintiff indicated that she received outpatient mental health treatment until age 18, but denied any other history of mental health treatment. [Tr. 216]. Plaintiff stated she was not currently taking any psychotropic medication. [Id.]. She reported that she was homeless and that her daily activities consisted of finding food, a place to shower, and a place to sleep. [Tr. 217]. Dr. Whitehead noted that Plaintiff "regularly goes shopping for groceries. She appeared to have the financial acumen necessary to make her own purchases[.]" [Id.]. Plaintiff reported that she was able to perform household chores, cook, and follow a recipe. [Id.]. Dr. Whitehead found that Plaintiff had the ability to perform a limited range of activities with effectiveness, and appeared to choose her activities appropriately. [Id.]. Dr. Whitehead assessed that Plaintiff's "fine- and gross-motor skills were within normal limits. Her ability to understand and remember general items and concepts may be mildly impaired . . . Her concentration and persistence appear markedly impaired, making her ability to meet the demands of work-related decisions inconsistent." [Tr. 218]. Dr. Whitehead found Plaintiff's ability to socially interact was moderately impaired, her ability to adapt to changes in the workplace was unimpaired, and her ability to make "work-related decisions inconsistent." [Id.]. Dr. Whitehead diagnosed major depressive disorder, PTSD, a history of back, kidney, and fallopian tube problems, and a Global Assessment of Function ("GAF") score of 50. [Id.].

Dr. Cal VanderPlate, a state agency reviewing psychologist, submitted a psychiatric RFC on September 29, 2011. [Tr. 220]. He diagnosed Plaintiff with major depressive disorder but found that the criteria for PTSD was not met. [Tr. 223, 232]. Dr. VanderPlate assessed moderate restrictions in activities of daily living, social functioning, concentration, persistence,

7

or pace, and no episodes of decompensation. [Tr. 230]. Dr. VanderPlate found that Plaintiff could understand and remember simple directions, carry out simple tasks, maintain concentration, persistence, and pace for two hour periods during an eight-hour workday, appropriately relate to the public (except supervisors), and manage stress and changes. [Tr. 235]. Dr. VanderPlate gave Dr. Whitehead's assessment regarding concentration and persistence "little weight" because Plaintiff's attention was intact and memory was within normal limits. [Tr. 232]. He further noted that Plaintiff's daily activities and cognitive functioning were inconsistent with Dr. Whitehead's medical source statement. [Id.]. Dr. Edward Sachs affirmed Dr. VanderPlate's assessment on February 14, 2012. [Tr. 271].

On October 17, 2011, Dr. Robert A. Blaine conducted a consultative physical examination. [236]. Plaintiff reported that she had experienced chronic back pain for eight years. [Id.]. Dr. Blaine noted her past diagnosis of a pinched nerve in her spine and noted that Plaintiff was not taking any medications for her pain. [Id.]. Dr. Blaine diagnosed low back pain and assessed that Plaintiff could stand or walk for 6 hours in an 8-hour day, lift and carry 5 pounds frequently and 25 pounds infrequently, and sit for 3 to 4 hours in an 8-hour day with frequent rest breaks and changes of positions. [Tr. 238]. Plaintiff demonstrated regular grip and muscle strength and normal gait, station, tandem walk, heel and toe walk, single leg stand, and squatting. [Tr. 237].

Dr. Anita Johnson submitted a non-examining physical consultant evaluation on October 24, 2011, finding "[n]o medically determinable physical impairment." [Tr. 240-45]. Dr. Johnson considered Dr. Blaine's assessment that Plaintiff had virtually full range of motion and no neurological or musculoskeletal impairment and determined that Plaintiff's allegations of work limitations were not credible due to the lack of a medically determinable impairment. [Tr.

8

243]. Dr. Ramona Minnis submitted a non-examining physical assessment on February 9, 2012. [Tr. 266-70]. She also concluded that Plaintiff had no medically determinable physical impairments. [Tr. 266].

Plaintiff sought treatment from Family Nurse Practitioner ("FNP"), Linda Housewright, in September 2012 for gastroenteritis and in November of 2012 for musculoskeletal pain. [Tr. 272-80]. On November 1, 2012, FNP Housewright noted chronic migraines, joint pain, actinic keratosis, cervix screenings, and depression. [Tr. 272]. Plaintiff's musculoskeletal exam revealed a tender cervical, thoracic, and lumbar spine. [Tr. 273]. During the psychological exam, Plaintiff was "oriented to time, place, person, and situation" and "demonstrate[d] the appropriate mood and affect." [Tr. 273]. FNP Housewright noted Plaintiff's history of noncompliance with medical treatment, and referred her for a neurological evaluation. [Tr. 273-74].

Dr. Abdelrahman Muhamed conducted a neurology consultation on December 6, 2012, noting that Plaintiff "presents for headaches for 7-8 years." [Tr. 281-82]. Dr. Muhamed found that Plaintiff was "alert and oriented to person, place, and time" and that her overall neurological exam was normal. [Tr. 282]. Dr. Muhamed diagnosed migraines and anxiety, noting that Plaintiff "consumes large amounts of [caffeine] pills and drinks[,]" and concluded that Plaintiff's headaches were drug-induced. [Id.].

## B. *Other Evidence*

The ALJ conducted a hearing on December 17, 2012, in which the Plaintiff and vocational expert ("VE"), Dr. Donna Bardsley, testified. [Tr. 27-54]. On January 9, 2013, the ALJ issued an unfavorable decision. [Tr. 9-26]. The ALJ found that although Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's

9

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" [Tr. 18]. The ALJ gave little weight to non-treating physicians, Drs. Blaine and Whitehead, and the ALJ credited great weight to the opinions of the State Agency psychological medical consultants. [Tr. 17-19]. The ALJ found that Dr. Blaine's opinion was inconsistent "with the claimant's benign clinical presentations, the absence of any aggressive treatment and her reported activities of daily living." [Tr. 19]. Dr. Whitehead was accorded little weight "in her determination that the claimant's concentration and persistence appear markedly impaired, making her ability to meet the demands of work-related decisions, inconsistent, as Dr. Whitehead does not specify any level of skill in the ability to make work-related decisions, i.e. simple or complex." [Id.]. The ALJ concluded that the Plaintiff was not disabled and could perform her past relevant work as a housekeeper and cleaner. [Tr. 20-21].

## V.  POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in his RFC analysis by improperly weighing the medical evidence of record and erroneously discounting her subjective complaints. The Plaintiff further argues that the Commissioner's decision that Plaintiff is capable of performing past relevant work is not supported by substantial evidence.

The Commissioner responds that the ALJ's RFC is supported by substantial evidence and adheres to agency procedure. The Commissioner contends that the ALJ properly considered the medical evidence in evaluating Plaintiff's subjective complaints and assessing her RFC. The Commissioner further argues that the ALJ's determination that Plaintiff could perform past relevant work is supported by substantial evidence.

## VI.  ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

10

**A. RFC ANALYSIS**

The Plaintiff argues that the ALJ's RFC analysis erred in two respects. Specifically, Plaintiff contends that the ALJ erred in his consideration of the medical evidence and assessment of her credibility. The court will address both of these issues in turn.

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003). However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to a claimant's functional and physical limitations. Simpson v. Colvin, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) (internal citations omitted). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." Wright v. Astrue, 1:07-CV-226, 2009 WL 890051, at *1 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., 1999 WL 96920, *4 (6th Cir. Feb. 2, 1999)).

*1. Consideration of Medical Opinion Evidence*

The Plaintiff argues that the ALJ did not properly consider the medical opinions of Dr. Robert A. Blaine or Dr. Diane Whitehead. [Doc. 15 at 6-7]. The Court disagrees. Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC. 20 C.F.R. § 404.1527(b). An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

11

evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

Non-treating physicians are not subject to controlling weight. Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); Sommer v. Astrue, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

12

Although an ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled, 20 C.F.R. § 404.1527(b), she need not specifically address each piece of evidence to adequately consider the record in its entirety. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

Here, the Plaintiff argues that the ALJ erred by giving little weight to the medical opinion of Dr. Blaine, who found Plaintiff unable to do either her past relevant work or a full range of medium work. [Doc. 15 at 6]. The Plaintiff also submits that the ALJ failed to properly weigh the medical opinion of Dr. Whitehead. [Id. at 7]. The Plaintiff argues that the ALJ should have given these medical opinions more weight because they were supported by the medical evidence of record. [Id.]. The Court disagrees.

Initially it should be noted that it matters not whether the Court disagrees with the ALJ's conclusion or whether there is other evidence in the record that supports a different finding. See Crisp, 790 F.2d at 453 n.4. The only questions before the Court are whether the ALJ adhered to agency procedure and formulated a decision that is supported by substantial evidence. The Court finds in the affirmative as to both questions.

In regards to Dr. Blaine's medical opinion, the ALJ stated that "[t]he undersigned gives little weight to the opinion of consultative examiner, Dr. Blaine, as his opinion is inconsistent with the claimant's benign clinical presentations, the absence of any aggressive treatment and her reported activities of daily living." [Tr. 19]. In granting Dr. Blaine little weight, the ALJ relied on Plaintiff's conservative treatment history. [See id.]. The ALJ explained that "[w]hile the

13

evidence shows the claimant has some lower back pain, in the absence of any aggressive treatment, the undersigned has limited the claimant to medium exertion that does not require more than frequent postural activities." [Id.]. The ALJ granted Dr. Whitehead little weight "in her determination that the claimant's concentration and persistence appear markedly impaired, making her ability to meet the demands of work-related decisions, inconsistent, as Dr. Whitehead does not specify any level of skill in the ability to make work-related decisions, i.e. simple or complex." [Id.].

In determining the weight due Drs. Blaine and Whitehead, the ALJ considered many of the factors in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). See 20 C.F.R. 404.1527(c)(2-6) (explaining that treatment relationship, length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors will all be taken into account when weighing medical opinions of non-treating examining physicians). The ALJ specifically considered the physicians specialization and treatment relationship, noting that they were both non-treating physicians and conducted one-time examinations. [Tr. 17-19]. He further measured the consistency and supportability of their opinions, noting Plaintiff's "benign clinical presentations and lack of any aggressive treatment and her reported activities of daily living." [Tr. 19]. In regards to Dr. Whitehead, the ALJ found her opinion unsubstantiated due to her own lack of specificity. [See id.]. Based on his consideration of the medical evidence, the ALJ explained the basis for his RFC determination and concluded that "claimant is limited to simple, unskilled work and that she is better with things rather than people." [Tr. 19].

The ALJ's consideration of Drs. Blaine and Whitehead is supported by the record, which reveals relatively benign findings and a lack of consistent medical treatment. [See Tr. 202-13,

14

245-65, 283-84, 272-82] (Plaintiff's treating physician records reflecting sporadic treatment and benign test and examination results); [Tr. 237] (Dr. Blaine's own records showing Plaintiff's regular grip and muscle strength, virtually full range of motion in her neck and back, and normal neurological exam including normal gait, station, tandem walk, heel and toe walk, single leg stand, and squatting); [Tr. 232] (Dr. VanderPlate assigning Dr. Whitehead's assessment regarding concentration and persistence little weight because Plaintiff's attention was intact and memory was within normal limits); [Tr. 271] (Dr. Sachs affirming Dr. VanderPlate's opinion); [Tr. 240 & 266] (Drs. Johnson and Minnis finding no medically determinable physical impairments). Further, Dr. Whitehead conducted no psychological testing and her opinion, based on a single examination, appears to be supported exclusively by Plaintiff's subjective complaints and actions. [See Tr. 215-18]. Further, as previously noted, Dr. Whitehead did not specify any skill level (such as simple or complex) with regard to Plaintiff's ability to make work related decisions. [See id.].

The Court finds that the ALJ's decision is supported by substantial evidence and adheres to agency procedure. The ALJ considered many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) and explained his reasoning with clarity and specificity. Agency regulations require no more and neither shall this Court. Any argument to the contrary is without merit.

### 2. Credibility

Plaintiff argues that the ALJ's credibility assessment was unsupported by substantial evidence. [Doc. 15 at 8]. The Commissioner contends that the ALJ's decision to discount the Plaintiff's subjective complaints was supported by substantial evidence. [Doc. 17 at 6-11]. The Court agrees with the Commissioner.

15

An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant.") The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (emphasis in the original)).

Here, the ALJ's determination of credibility is supported by substantial evidence. The ALJ found that "the evidence fails to substantiate the claimant's allegations of total disability . . . the claimant's allegations of disabling pain and other limitations are credible only to the extent that they are consistent with the established residual functional capacity." [Tr. 19]. In making this finding, the ALJ "considered claimant's subjective allegations" and found that she had "severe impairments that could reasonably be expected to cause some limitations but not to the extent alleged." [Id.]. The ALJ reasoned that Plaintiff could "sit, stand, walk and move about in a satisfactory manner. The evidence also shows that the claimant has good use of [her] upper and lower extremities." [Id.]. The ALJ went on to note that Plaintiff never required aggressive treatment, referral to pain management clinics, hospitalization, or experienced adverse side effects to medication. [Id.]. The ALJ also noted the lack of a treating physician opinion setting forth disabling limitations. [Id.]. Next, the ALJ considered Plaintiff's daily activities, including her ability to cook, clean, perform household chores, shop for groceries, visit with family,

17

manage her finances, and pay bills. [Id.]. The ALJ noted that Plaintiff continued to smoke even though her respiratory problems "could be expected to improve, perhaps dramatically, if the claimant ceased cigarette smoking[,]" and found that Plaintiff's smoking habit "detracts from her allegations of significant breath impairment." [Id.].

In making his determination of credibility, the ALJ applied many of the factors set forth in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529(c)(3). As set forth above, the ALJ specifically considered Plaintiff's daily activities, her subjective complaints regarding her pain and symptoms, precipitating and aggravating factors, the side effects of her medication, treatment plans, and other factors impacting her functional limitations. [See Tr. 19]; see also Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). The ALJ's opinion was "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3. The Court finds that a review of the record in its entirety supports the ALJ's credibility determination. [See Tr. 245-46] (all diagnostic tests and physical exams from Wellmont and Hawkins were normal); [Tr. 237] (Plaintiff's demonstration of regular grip and muscle strength and normal gait, station, tandem walk, heel and toe walk, single leg stand, and squatting during Dr. Blaine's exam); [Tr. 240 & 266] (Drs. Johnson and Minnis finding Plaintiff had no determinable physical impairments); [Tr. 273] (FNP Housewright noting Plaintiff's history of noncompliance); [Tr. 282] (Dr. Muhamed concluding that Plaintiff's chronic headaches were drug-induced).

The Court finds that the ALJ's credibility assessment is supported by substantial evidence and adheres to the standards set forth in Social Security Ruling 96-7p. See Tyra v. Soc. Sec. Admin., 896 F.2d 1024, 1030 (6th Cir. 1990) (explaining that "the ALJ may dismiss a claimant's

18

allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" the alleged severity of symptoms). In Tyra, the Sixth Circuit found that the plaintiff's subjective complaints were properly dismissed "because the medical and testimonial evidence failed to confirm the severity of the pain." Id. The ALJ made similar findings here, and the Court is equally persuaded. Plaintiff's argument to the contrary is without merit.

### 3. Past Relevant Work

Plaintiff argues that the opinion of Dr. Blaine renders the Plaintiff unable to do either her past relevant work or the range of medium work alternatively found by the ALJ, [see Tr. 20-21], and that the ALJ erroneously gave little weight to Dr. Blaine's opinion at step five of the disability analysis. [Doc. 15 at 6 & 9]. The Court finds this argument to be without merit and moot because the Court has already found that the ALJ's RFC and consideration of the medical evidence, including the weight assigned to Dr. Blaine, is supported by substantial evidence. Therefore, any argument that the ALJ improperly relied on Plaintiff's RFC at step five is moot.

Accordingly, Plaintiff's argument in this regard is not well taken.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 14]** be **DENIED**, and that the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED.**

Respectfully submitted,


    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).